IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-002288-RBJ

THE GEO GROUP, INC,

    Plaintiff,

v.

UNITED GOVERNMENT SECURITY OFFICERS OF AMERCIA INTERNATIONAL UNION, and its LOCAL 840,

    Defendant.

---

# ORDER

---

This matter is before the Court on cross motions for summary judgment filed by plaintiff The GEO Group, Inc. ("GEO") and defendant United Government Security Officers of America International Union and its Local 840 ("the Union"). *See* ECF Nos. 28–29. For the reasons below, the Court GRANTS IN PART and DENIES IN PART the Union's motion [ECF No. 28] and DENIES GEO's motion [ECF No. 29].

## I. FACTS

Plaintiff GEO is a federal government contractor that provides correctional and detention services for the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") and the United States Marshal Service ("USMS") at a detention facility in Aurora, Colorado. Compl., ECF No. 1, at ¶¶3, 5. The Union, which is the defendant in this action, represents GEO's detention officers, transportation officers, field training officers, and kitchen officers working at that facility. *Id.* at ¶6. For the past few years, GEO and the Union

have been locked in a battle over how GEO must assign overtime jobs to Union members. *See, e.g.*, *id.* at ¶¶21–22.

GEO contends that for security purposes its contracts with ICE and USMS require it to assign overtime jobs that come up under one agreement to only those employees working on that same contract. For the past few years it has therefore maintained separate lists of its employees and assigned overtime jobs accordingly. *Id.* at ¶10.

The Union sees it differently. It argues that Article 4.9 of the parties' collective bargaining agreement ("CBA"), which went into effect on January 24, 2014, *id.* at ¶13, clearly and unequivocally prohibits GEO from doing that. Instead, the Union contends, the parties' CBA requires that GEO use a single, comprehensive list of eligible Union members so that no employee is overlooked simply because of the contract on which they work.

## Arbitration

To resolve this dispute, the Union filed a grievance with GEO roughly a week after the parties' CBA went into effect.[1] *Id.* at ¶21. The Union's grievance was relatively simple: because the parties' CBA had only been in effect for a few days, all that the Union requested was a decision regarding the parties' respective rights under Article 4.9 of the CBA. *See id.* It did not initially seek any remedy. *See id.* After GEO denied the Union's grievance the parties attended arbitration hearings before Arbitrator Daniel Winograd on December 10, 2014 and February 18, 2015. *Id.* at ¶¶21–23.

On April 15, 2015 the Arbitrator issued an Opinion and Award (the "Initial Award") granting the Union's grievance. ECF No. 1-4. The Arbitrator found, among other things, that Article 4.9 required GEO to offer overtime to employees regardless of the contract on which they worked. *Id.* at 12–23. He therefore agreed with the Union's position, holding that the parties'

---
[1] The parties' CBA expired on January 23, 2017. ECF No. 1 at ¶7.

CBA required that GEO maintain one overtime eligibility list and offer overtime jobs under its contract with USMS to employees working on its ICE contract and vice versa. *Id.* at 18.

The Arbitrator nevertheless addressed GEO's argument that its contracts with ICE and USMS required the use of separate lists and that the Preamble of the CBA, which seemingly incorporated this requirement, trumped any contrary provision within the Agreement. *Id.* at 18–23. He found, however, that the Preamble and GEO's client contracts did not defeat the company's obligations under Article 4.9 because there were many ways GEO could comply with both provisions. *Id.*

For example, GEO could obtain the same clearances for all Union members so that they were essentially interchangeable. *Id.* at 22. The company could also simply compensate employees on one contract bypassed for overtime work under the other. *Id.* What's more, the Arbitrator reasoned, some cross-assignment appeared to already occur at the Aurora facility with some regularity, undercutting GEO's argument that these provisions were irreconcilable. *See id.* at 14. With that holding the Arbitrator urged the parties to subsequently "devise a plan" about how GEO could most efficiently and cost effectively comply with its client contracts and Article 4.9. *Id.* at 23.

The parties were unable to do so. Nevertheless, they agreed to return to arbitration to have the Arbitrator decide how GEO must implement his earlier decision. ECF No. 1-5 at 7. The Arbitrator subsequently issued a Supplemental Award Concerning Enforcement of the Arbitrator's Award (the "Supplemental Award') on June 16, 2016. *See generally id.* That Supplemental Award ordered GEO to give back pay to all Union members GEO bypassed for overtime in violation of Article 4.9. *Id.* at 10–11.

Procedural History

A few months after the Arbitrator handed down his Supplemental Award GEO filed suit against the Union. ECF No. 1. In its complaint GEO asserts only one claim to vacate both the Arbitrator's Initial and Supplemental Awards. *Id.* at ¶¶34–39. In response, the Union asserts three counterclaims: (1) for breach of the parties' CBA by failing to adhere to the Arbitrator's Supplemental Award of back pay; (2) for confirmation of Arbitrator Winograd's Supplemental Award in accordance with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9; and (3) for confirmation of the Supplemental Award under C.R.S. § 13-22-222. Def.'s Answer, ECF No. 18, at ¶¶18–27. Both parties subsequently filed motions for summary judgment. ECF Nos. 28–29. These motions are fully briefed and ripe for review.

## II. STANDARD OF REVIEW

**A. Rule 56 – Summary Judgment.**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing A*nderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light

most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

**B. Review of an Arbitrator's Awards.**

A court's "review of arbitral awards is among the narrowest known to the law." *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir. 1989). Indeed, the Tenth Circuit has explained that so long as an arbitrator's award "draws its essence" from the parties' CBA it should be upheld. *See, e.g.*, *Air Methods Corp. OPEIU*, 737 F.3d 660, 665 (10th Cir. 2013) (citations omitted); *see also United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) ("[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.").

That being said, "an arbitrator's discretion is not unlimited." *Id.* Rather, "an arbitrator is confined to interpretation and application of the collective bargaining agreement . . . [and] does not sit to dispense his own brand of industrial justice[.]" *Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc., a Div. & Subsidiary of Dillon Cos., Inc.*, 222 F.3d 1223, 1227 (10th Cir. 2000) (internal quotation marks and citations omitted).

### III. ANALYSIS

Although the substance of GEO and the Union's motions largely overlap, the Union's motion addresses the merits of its counterclaims whereas GEO's motion does not. Accordingly, I discuss each motion in turn. I begin with GEO's motion.

**A. GEO's Motion for Summary Judgment [ECF No. 29].**

GEO's motion seeks a summary judgment on its claim to vacate the Arbitrator's Initial and Supplemental Awards. ECF No. 29-1 at 9–15. In the main, GEO argues that those awards

should be vacated because the Arbitrator "ignored" the Preamble of the CBA, and his awards therefore do not "draw their essence" from the parties' Agreement. *Id.* I disagree.

As both parties acknowledge, the standard for reviewing an arbitrator's award is exceedingly narrow. *See Air Methods Corp.*, 737 F.3d at 665 (explaining that "[w]hether the arbitrator's reading of the agreement was strained or even seriously flawed . . . is irrelevant") (internal quotation marks and citations omitted); *see also Sterling Colo. Beef Co. v. United Food & Commercial Workers, Local Union No. 7*, 767 F.2d 718, 720 (10th Cir. 1985) ("The Court thus will not interfere with an arbitrator's decision unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation.").

Indeed, as the Tenth Circuit has explained, it does not matter "that a court is convinced [the arbitrator] committed serious error[.]" *See Air Methods Corp.*, 737 F.3d at 665 (internal quotation marks and citations omitted). Such a finding "does not suffice to overturn his decision[.]" *Id.* Rather, "[s]o long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority" his or her award "draws its essence" from the parties' Agreement and must be upheld. *Id.* (internal quotation marks and citations omitted).

Such is the case with both of the Arbitrator's awards here. First, in finding that Article 4.9 of the CBA compelled GEO to offer ICE officers the chance to work overtime on USMS contract jobs and vice versa, the Arbitrator discussed and applied the parties' Agreement. For instance, his analysis included a lengthy discussion of Article 4.9 and various other provisions within the Agreement. *See, e.g.*, ECF No. 1-4 at 12–23 (referencing Article 4.9, Article 11.9, Article 11.15, and Article 25.2). It also included an analysis of how those provisions (in particular, Article 4.9) interacted with the Preamble of the CBA—a provision that GEO questionably asserts the Arbitrator "ignored." *See id.* Given that analysis and the exceedingly

6

generous standard of review, the Arbitrator's Initial Award must be affirmed.[2] *See, e.g.*, *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Air Methods Corp.*, 737 F.3d at 665.

I find GEO's arguments to vacate the Arbitrator's Supplemental Award unavailing as well. With respect to that decision, GEO contends that the Arbitrator exceeded his authority by awarding back pay even though the Union's grievance did not ask the Arbitrator to issue any remedy. GEO therefore analogizes the Arbitrator's Supplemental Award to the award the Tenth Circuit vacated in *Retail Store Employees Union Local 782 v. Sav-On Groceries*, 508 F.2d 500, 503 (10th Cir. 1975).

*Sav-On*, however, is distinguishable. In that case the arbitrator improperly awarded back pay to an employee as part of his *initial* award because the grievance at issue did not request one. *Id.* at 503. Here, by contrast, the parties specifically agreed *after* the initial award was handed down to have the Arbitrator accept jurisdiction once again to specifically decide the issue of remedies. *See* ECF No. 1-5 at 7 ("[T]he Union requested that the arbitrator reassert jurisdiction over this case *in order to resolve the remedial issue* and the Company affirmatively assented to that procedure.") (emphasis added). In other words, unlike the arbitrator in *Sav-On*, the Arbitrator here granted a remedy only after a request by both parties to do exactly that. GEO's argument on this point, which ignores that procedure of this case, is therefore unconvincing.

But a significant issue remains—did the Arbitrator nevertheless abuse his authority by granting the specific remedy of an award of back pay? Again, I say no. While it appears that the parties' CBA does not specify an exact remedy under these circumstances, the Tenth Circuit has

---

[2] To the extent GEO attacks the underlying factual findings the Arbitrator made in the Initial Award (e.g., whether GEO's client contracts in fact required it to maintain separate lists and therefore whether the Preamble and Article 4.9 even clashed), I point out that an arbitrator's factual findings are unreviewable. *See Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union*, 24 F.3d 86, 87 (10th Cir. 1994) ("The arbitrator's factual findings are beyond review[.]").

explained that "courts favor the arbitrator's exercise of . . . broad discretion in fashioning remedies." *See Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 939 (10th Cir. 2001) (internal quotation marks and citations omitted).

Furthermore, here, GEO does not dispute the Arbitrator's finding that it violated Article 4.9. Thus, I find that the Arbitrator's decision to award back pay to Union members for these violations was reasonable and well within his authority to craft a remedy related to the "wrongs" he found to have occurred.[3] *See, e.g.*, *Painters Local Union No. 171 Int'l Bhd. of Painters & Allied Trades, AFL-CIO v. Williams & Kelly, Inc.*, 605 F.2d 535, 538 (10th Cir. 1979) (upholding an arbitrator's award of back pay because the arbitrator found that the defendant painting contractor violated a provision within the parties' CBA and because the contractor did not appear to dispute that finding); *id.* ("To hold otherwise would be to endorse the proposition that [the company] could unilaterally violate a contractual provision of a collective bargaining agreement with impunity.")

GEO's motion for a summary judgment on its claim to vacate the Arbitrator's Initial and Supplemental Awards is accordingly DENIED.

---

[3] The Union alternatively argues that GEO's claim to vacate the Initial Award is untimely. ECF No. 31 at 4–5 (arguing that under 29 U.S.C. § 185 and the applicable state statute of limitations, GEO had 90 days from the date of that award to file). In response, GEO argues that the appropriate time period is actually 91 days and began on the date of the Supplemental Award because that award "modified" the Initial Award and therefore tolled the statute of limitations. ECF No. 32 at 3; *see* C.R.S. § 13-22-224; *Swan v. Am. Family Mut. Ins. Co.*, 8 P.3d 546, 548 (Colo. App. 2000). I agree with the Union.

GEO is correct that a motion to modify or correct an award "tolls" the applicable 91-day statute of limitations under Colorado law. *See Swan*, 8 P.3d at 548. But GEO never filed a motion to correct or modify the Initial Award in this case, much less filed one within the applicable 91-day period for those motions. *See* C.R.S. § 13-22-224(1). Thus, the Arbitrator's Supplemental Award was not a correction or modification of the Initial Award but rather a decision on the entirely new issue of remedies. *See also* ECF No. 1-5 at 7. The applicable 91-day statute of limitations therefore expired well before GEO filed its complaint. For that alternative reason, GEO's attempt to vacate the Initial Award is unavailing.

## B. The Union's Motion for Summary Judgment [ECF No. 28].

Next, I turn to the Union's motion for summary judgment. As mentioned above, that motion seeks not only a summary judgment on GEO's claim, but also summary rulings on each of the Union's three counterclaims. To reiterate, those counterclaims are: (1) for breach of contract; (2) for confirmation of the Arbitrator's Supplemental Award in accordance with the FAA; and (3) for confirmation of the Supplemental Award under C.R.S. § 13-22-222. For the reasons below, I find that the Union is entitled to a summary judgment on GEO's claim and its claims for confirmation of the Supplemental Award but not on its breach of contract claim.[4]

With respect to GEO's claim, because I find *supra* that the Arbitrator's awards "drew their essence" from the parties' CBA, it logically follows that the Union's motion for a summary judgment on that claim must be granted.

Similarly, the Union is entitled to summary judgments on its two counterclaims for confirmation of the Supplemental Award. Both 9 U.S.C. § 9 and C.R.S. § 13-22-222 provide that a court must grant a parties' order to confirm an arbitrator's award unless the award is otherwise "vacated, modified, or corrected[.]" *See* 9 U.S.C. § 9 ("[A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected[.]"); C.R.S. §13-22-222(1) ("After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is

---

[4] GEO does not make any new arguments in response to the Union's motion for summary judgment on these counterclaims except that it reiterates that the Arbitrator's Award and Supplemental Award must be vacated.

modified or corrected[.]"). Finding that the Arbitrator's awards here are valid, I likewise grant the Union's motion on those two counterclaims.

The Union, however, is not entitled to a summary judgment on its breach of contract claim. The Union asserts that because GEO has thus far failed to compensate Union members with back pay in accordance with the Supplemental Award, GEO has breached Section 12.6(B) of the CBA. *See* ECF No. 18 at ¶¶18–23; ECF No. 1-2 at 24. Although it is true that GEO has not yet complied with the Supplemental Award, and that Section 12.6(B) provides that "[t]he decision or award of the arbitrator shall be final and binding upon the Company, the Union and the grievant," that provision goes on to allow "any party" the right to "appeal to an appropriate court of law a decision that was rendered by the arbitrator acting outside of or beyond the arbitration's jurisdiction, pursuant to applicable law." ECF No. 1-2 at 24. Having done exactly that, it cannot yet be said that GEO has breached the parties' Agreement. Accordingly, the Union's motion with respect to its breach of contract claim must be denied.

That brings me to one final issue. In the Union's motion it requests "limited discovery to obtain documents relevant to the voluntary overtime missed by Union members" as well as "a hearing to decide the amount that GEO owes under the Supplemental Award and for violations of the CBA." ECF No. 28 at 17. Because the Union seeks damages as part of its counterclaims and is entitled to a summary judgment on two of those claims, I agree that limited discovery and a hearing on damages is appropriate as the "next steps" of this case. Accordingly, the Court orders the parties to contact chambers within 15 days of this Order to schedule a damages hearing and permits the parties to conduct limited discovery for the next 60 days on the issue of what damages the Union has sustained from GEO's violations of Article 4.9.

# ORDER

For the reasons above, the Court DENIES GEO's motion for summary judgment [ECF No. 29] and GRANTS IN PART and DENIES IN PART the Union's motion [ECF No. 28]. GEO's complaint is accordingly dismissed with prejudice. The Court likewise enters a judgment in the Union's favor on its second and third counterclaims. Finally, the Court orders that the parties contact chambers within 15 days of this Order to schedule a hearing on the Union's damages and permits the parties to conduct limited discovery for the next 60 days on that issue.

DATED this 6th day of July, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge